**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

GREEN PARTY OF ARKANSAS;                                                    PLAINTIFFS
MARK SWANEY; and REBEKAH KENNEDY

v.                                     Case No. 4:09CV00695 JLH

CHARLIE DANIELS, in his official capacity
as Secretary of State of the State of Arkansas                             DEFENDANT

<u>**OPINION AND ORDER**</u>

The Green Party of Arkansas, Mark Swaney, and Rebekah Kennedy, commenced this action

against Charlie Daniels, in his official capacity as Arkansas Secretary of State, alleging that Daniels

has misinterpreted or misapplied Ark. Code Ann. § 7-1-101(21)(C)[1] and that the statute violates the

First and Fourteenth Amendments. Daniels has filed a motion to dismiss for failure to state a claim.

Plaintiffs have responded, and Daniels has replied. For the following reasons, the motion to dismiss

is denied.

**I.**

In ruling on a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all of the factual

allegations contained in the complaint, and review[s] the complaint to determine whether its

allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.*, 517 F.3d

544, 549 (8th Cir. 2008). All reasonable inferences from the complaint must be drawn in favor of

the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir.

2004). "To avoid a dismissal, a complaint must allege facts sufficient to state a claim as a matter

---

[1] Plaintiffs mistakenly cite to Ark. Code Ann. § 7-1-101(18)(C) as Arkansas's
decertification statute, but that section does not exist. Arkansas's decertification statute, which is
the issue of this lawsuit, is found at section 101(21)(C).

of law and not merely legal conclusions." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery." *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). Stated differently, the plaintiff must "raise a right to relief above a speculative level." *Schaaf*, 517 F.3d at 549.

## II.

The plaintiffs describe their case as "an action to preserve the Green Party's place on the ballot in Arkansas." According to the complaint, the Green Party successfully petitioned to be on the ballot as a political party in 2006 and 2008. Mark Swaney is a member of the Green Party and wishes to vote for that party in the future. Rebekah Kennedy was the party's nominee for United States Senate in 2008, wishes to run as a Green Party candidate in the future, and wishes to vote for Green Party candidates in the future. Plaintiffs assert that Charlie Daniels, the Arkansas Secretary of State, has decertified, or intends to decertify, the Green Party pursuant to Ark. Code Ann. § 7-1-101(21)(C). That subsection provides that when a political party fails to obtain three percent of the total votes cast in a gubernatorial or presidential election, it will cease to be a political party. Ceasing to be a political party means that a party's candidates will not appear on the ballot unless

the party submits a petition with the signatures of at least 10,000 registered voters.  The plaintiffs

seek a declaratory judgment that the Green Party has met the requirements of section 101(21)(C) and

should not be decertified.  In the alternative, if section 101(21)(C) operates to decertify the Green

Party, the plaintiffs seek a declaration that the decertification statute violates the First and Fourteenth

Amendments.[2]

The complaint alleges that the Green Party's 2006 petition campaign cost the party

approximately $32,000, which was all of the money that the party then had to operate.  The Green

Party's gubernatorial candidate in 2006 received 1.65% of the votes, so the Green Party lost its

certification and had to petition again in 2008 to be recognized as a political party.   Again, the

petition campaign took all of the party's money.  The Green Party's presidential candidate in 2008

chose not to campaign in Arkansas and received 0.3% of the votes.  Kennedy, who was the Green

Party's candidate for the United States Senate, received 20% of the votes.   Three Green Party

candidates for the United States House of Representatives received 23.22% of the votes, 21.47% of

the votes, and 13.83% of the votes, respectively.  One Green Party candidate for the Arkansas House

of Representatives was elected.

The complaint alleges that the vote totals in the races in which the Green Party candidates

campaigned show that the party has a significant modicum of support, that if it is decertified it will

be required to undertake another costly petition campaign, and that the Arkansas statutes force

---

[2] The complaint states that the Green Party has received no notice of decertification, but
that Daniels has decertified or intends to decertify the Green Party as a political party pursuant to
section 101(21)(C).  Although it is unclear whether the Green Party has been decertified,
Daniels's briefs do not dispute that he has decertified or intends to decertify the Green Party as a
political party in Arkansas.  Therefore, the Court will assume that the Green Party has asserted an
injury-in-fact and that standing is not an issue.

parties to compete in gubernatorial and presidential elections and thus forecloses the development of parties that lack the resources to mount presidential campaigns. The complaint alleges that the Arkansas statutory scheme severely burdens the plaintiffs' associational rights. The complaint seeks declaratory and injunctive relief.

Daniels has moved to dismiss the complaint. After providing the Court with an overview of Arkansas ballot access law, recent election history, and the Green Party's participation in the electoral process, Daniels summarizes federal case law on state regulation of ballot access. In setting out the general standard for federal review of state ballot access law, Daniels relies heavily on *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S. Ct. 1364, 137 L. Ed. 2d 589 (1997), and *Munro v. Socialist Workers Party*, 479 U.S. 189, 107 S. Ct. 533, 93 L. Ed. 2d 499 (1986). Daniels argues that other courts have upheld ballot access laws that are similar to or more restrictive than Arkansas's. *See, e.g.*, *Am. Party of Texas v. White*, 415 U.S. 767, 94 S. Ct. 1296, 39 L. Ed. 2d 744 (1974); *Jenness v. Fortson*, 403 U.S. 431, 91 S. Ct. 1970, 29 L. Ed. 2d 554 (1971); *Libertarian Party of Maine v. Diamond*, 992 F.2d 365 (1st Cir. 1993); *Libertarian Party v. Bond*, 764 F.2d 538 (8th Cir. 1985); *Arutunoff v. Oklahoma State Election Bd.*, 687 F.2d 1375 (10th Cir. 1982); *Socialist Workers Party v. Davoren*, 378 F. Supp. 1245 (D.C. Mass. 1974); *State, Division of Elections v. Metcalfe*, 110 P.3d 976 (Alaska 2005).

Daniels argues that the fact that the Green Party has been able to gain access to Arkansas ballots shows that Arkansas's ballot access laws are not unduly restrictive. Daniels says that state laws usually use presidential or gubernatorial races as a measure of a party's support because those are the only races consistently contested by both major parties and third parties. Daniels also notes that this Court has previously held that the Green Party can gain access via the 10,000 signature

requirement, which is not unreasonable. *Green Party of Arkansas v. Daniels*, 445 F. Supp. 2d 1056 (E.D. Ark. 2006); *Rock v. Bryant*, 459 F. Supp. 64 (D.C. Ark. 1978). Daniels concludes that Arkansas's decertification statue as applied to the Green Party is constitutional, and that the Court should decline to exercise supplemental jurisdiction over the state law claim regarding Daniels's application of the statute.

In response, the plaintiffs contend that their complaint does state a claim for declaratory relief under the First and Fourteenth Amendments. Plaintiffs argue that all that is required to state a claim in this context is to allege that Arkansas's laws unreasonably or unnecessarily burden their First and Fourteenth Amendment rights, which the complaint has done. The plaintiffs assert that, pursuant to *Mandel v. Bradley*, 432 U.S. 173, 97 S. Ct. 2238, 53 L. Ed. 2d 199 (1977), this Court must undertake an independent examination of the complaint's facts and merits before dismissing. Finally, plaintiffs take issue with the relevance of Daniels's cited cases and his characterization of them. Plaintiffs say that most of Daniels's cited cases do not involve decertification statutes, and the two cases that do (*Arutunoff* and *Metcalfe*) are clearly distinguishable. Plaintiffs also contend that Daniels's survey of other states' ballot access laws omits the low threshold requirements in Arizona, Georgia, Maine, and New Mexico for parties seeking to remain on a ballot in future elections. Plaintiffs also argue that even if their federal claim is dismissed, this Court should not decline to exercise supplemental jurisdiction over their state law claim that Daniels has misinterpreted or misapplied Arkansas's decertification statute.

### III.

Arkansas defines "political party" as follows: "[A]ny group of voters that at the last preceding general election polled for its candidate for Governor in the state or nominees for

presidential electors at least three percent (3%) of the entire vote cast for the office." ARK. CODE. ANN. § 7-1-101(21)(A).  Arkansas also provides for decertification of a political party: "When any political party fails to obtain three percent (3%) of the total votes cast at an election for the office of Governor or nominees for presidential electors, it shall case to be a political party." ARK. CODE. ANN. § 7-1-101(21)(C).

Courts have generally upheld two-tier ballot access schemes that require a party to exhibit a greater percentage of signatures to avoid decertification than the percentage required to be certified initially. *McLaughlin v. North Carolina Bd. of Elections*, 65 F.3d 1215, 1223 (4th Cir. 1995) (collecting cases).  Arkansas's ballot access law, however, can no longer be properly characterized as a two-tier scheme.  In *Green Party of Ark. v. Daniels*, 445 F. Supp. 2d 1056 (2006), this Court held that a three percent requirement to gain ballot access was not narrowly drawn to serve a compelling state interest, and that the 10,000 signature requirement was a sufficient modicum of support. *Id.* at 1062.  Since that ruling, Arkansas's ballot access statute has been amended to allow groups to gain ballot access as new political parties by obtaining the signatures of at least 10,000 registered voters in the state. ARK. CODE ANN. § 7-7-205(a).

The Court has considered the relevant case law, including the cases cited by both parties in their respective briefs.  Based on the Court's research and reading of the relevant cases, the Court cannot say at this point that it would be appropriate to dismiss the plaintiffs' complaint for failure to state a claim.  Daniels argues that the plaintiffs' First and Fourteenth Amendment rights have not been violated because Arkansas now allows Green Party candidates to seek re-certification by obtaining the signatures of 10,000 residents, which is constitutional.  However, the complaint challenges the constitutionality of the Arkansas statute providing for decertification of the Green

Party, after the party had successfully been certified for both the 2006 and 2008 elections.  More specifically, the complaint avers that Arkansas's decertification statute unfairly hinges on the results of the elections for Governor and President, which alternate every two years.[3]  Since the state Green Party has little or no control over the amount of involvement or campaigning done in Arkansas by the Green Party's presidential candidate, the plaintiffs contend that basing the decertification statute on either or both of those races, rather than on the state races on which the state Green Party chooses to focus, is unconstitutional.

The Green Party's complaint contains a short and plain statement of the claim showing that the Green Party is entitled to relief, and the complaint gives Daniels fair notice of what the claim is and the grounds upon which it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).  The Court cannot say, based solely on the allegations in the complaint, that the complaint is barred as a matter of law.  The complaint meets the pleading standards of the Federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, Daniels's motion to dismiss is DENIED.  Document #6.

IT IS SO ORDERED this 16th day of November, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[3] The Governor of Arkansas, like the President of the United States, serves a four-year term, but Arkansas's gubernatorial elections are held in years in which there is no presidential election.